13 CV 5239

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ x
Lake Plaza Shopping Center LLC,           :   Docket No. CV     JUDGE KARAS
                                          :
                                          :
                      Plaintiff,          :
                                          :
         – against –                      :
                                          :   **COMPLAINT**
Aon Risk Services Central, Inc. and ACE American :
Insurance Company,                        :   **Trial by Jury Demanded**
                                          :
                                          :
                      Defendants.         :
------------------------------------------ x

FILED
U.S. DISTRICT COURT
13 JUL 26 PM 3:09
S.D. OF N.Y.

Plaintiff, for its complaint, alleges:

**Parties**

1. Lake Plaza Shopping Center LLC (the "LLC") is, and at all times relevant hereto has been, a limited liability company organized and existing under the laws of the State of New York.

2. Upon information and belief, Defendant, ACE American Insurance Company, ("ACE") is, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of Pennsylvania.

3. Upon information and belief, Defendant, Aon Risk Services Central, Inc., is, and all time relevant hereto has been, a corporation organized and existing under the laws of the State of Illinois.

**Jurisdiction – – Diversity**

4. This is an action for damages.

5. Subject matter jurisdiction exists pursuant to the provisions of 28 U.S.C. § 1332(a)(1).

712791

6. Upon information and belief, there is complete diversity because: (i) ACE is a citizen of the State of Pennsylvania, where it is incorporated and maintains its nerve center; (ii) Aon is a citizen of the State of Illinois, where it is incorporated and maintains its nerve center; and, (iii) as more particularly alleged directly below, none of the members of the LLC are, either directly or indirectly, citizens of the States of Pennsylvania or Illinois.

7. The LLC consists of the following members: five limited liability companies and two individuals.

8. The members of the various LLCs ultimately are individuals.

9. None of the individuals are citizens either of Pennsylvania or Illinois.

### Venue

10. Upon information and belief, both ACE and Aon are residents of the State of New York for purposes of 28 U.S.C. § 1391(c) (2).

11. Accordingly, venue of this action is laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).

### Summary of Case

12. This case involves: (i) deceptive acts and practices by Aon in violation of New York General Business Law § 349; and, (ii) a fraud committed on the Supreme Court of the State of New York that was aided and abetted by ACE.

13. Aon is the insurance broker and insurance consultant for a retailer with numerous store locations (the "Retailer").

14. Upon information and belief, the Retailer has made many contracts with third parties, including the landlords of stores it operates, to procure commercial general liability insurance

2

protecting the Retailer's customers and the third parties with whom it has contracted against the consequences of personal injury claims.

15. Upon information and belief, Aon issues certificates of insurance and other similar documents to these third parties, on the Retailer's behalf, purporting to evidence the Retailer's compliance with its contractual obligations to procure commercial general liability coverage.

16. Aon provided Lake Plaza with a memorandum of insurance and then a certificate of insurance stating that the Retailer, one of Lake Plaza's tenants, was self-insured.

17. But, because the Retailer's lease with Lake Plaza required the Retailer to procure insurance, Lake Plaza sent the Retailer a letter advising that self-insurance was unauthorized and demanding that the Retailer procure the required coverage from a licensed insurance carrier.

18. The Retailer responded to the demand by, upon information and belief, causing Aon to issue successive certificates of commercial general liability insurance (the "Certificates") seemingly representing that the Retailer no longer was self-insuring.

19. Thus, the Certificates identified an insurance carrier, ACE, an ACE policy number and an aggregate coverage limit – – $5,000,000.

20. Upon information and belief, the Certificates were designed to mislead a reasonable reader acting reasonably into concluding that actual insurance had been procured and the Retailer's risk management program had been changed to replace self-insurance with actual, risk shifting insurance issued by a licensed carrier when, in actual fact, the Retailer had not many any changes in its risk management program.

21. Moreover, the Certificates did not disclose that the so-called policies each: (i) contained a deductible in the same $5,000,000 amount as the coverage aggregate; (ii) named, as

3

additional insureds, the owners of numerous other locations at which the Retailer operated stores who shared in the $5,000,000 of aggregate coverage; and, (iii) by collateral agreement, delegated to the Retailer total responsibility to defend, settle and indemnify all claims up to the $5,000,000 aggregate.

22. In legal and practical effect, neither Lake Plaza nor upon information and belief the numerous other parties named as "additional insureds" on the so-called "policies" had any insurance protection at all.

23. Upon information and belief, members of the general public injured at the Retailer's stores are dependent upon the Retailer's continued solvency for indemnification in the case of personal injury.

24. Upon information and belief, the availability to Lake Plaza and the other additional insureds of a paid for defense of claims that otherwise would be tendered to an insurance company for a defense, is dependent on the Retailer's continued solvency.

25. When Lake Plaza learned that the Certificates were a sham and that the self-insurance continued, it placed the Retailer in default.

26. The Retailer responded by commencing a lawsuit in New York State Supreme Court claiming to have procured new retroactive policies (the "New Policies") from ACE that supposedly removed any previous self-insurance.

27. The Retailer represented to the State Court in affidavits that the New Policies had been approved by the New York State Insurance Department (the "Insurance Department") at a meeting that, upon information and belief, was attended only by ACE representatives.

4

28. The representation that the Insurance Department had authorized retroactive insurance in the form of the New Policies could not be squared with an earlier Insurance Department policy statement determining that retroactive insurance could not be underwritten in New York.

29. In an effort to find out the basis for the Retailer's claim that the Insurance Department had approved the retroactive coverage, Lake Plaza filed a Freedom of Information Law ("FOIL") request with the Insurance Department seeking documents that might disclose the assumptions the Insurance Department made regarding the Retailer's risk management program.

30. One of the documents Lake Plaza requested was an e-mail memorandum (the "E-mail") Lake Plaza had reason to believe had been filed by ACE with the Insurance Department.

31. The Insurance Department denied Plaintiff's FOIL request explaining that ACE had invoked a privilege supposedly triggered by the Retailer's decision to enforce a confidentiality agreement between ACE and the Retailer.

32. But in the course of advising Lake Plaza that its FOIL request had been denied and that ACE could block production, the Insurance Department disclosed that ACE had advised the Insurance Department that if the E-mail was produced:

> "it will be used against ACE and ACE's client in litigation and that if disclosed, the email could provide an adverse party [Lake Plaza] with a 'roadmap' for countering ACE's client's legal arguments and asserting counterclaims against ACE and ACE's client."

33. Upon information and belief, ACE knew the State Court action was pending when it invoked the privilege, knew the E-mail would validate Lake Plaza's position and knew that the Retailer was attempting to mislead the State Court into concluding that the Retailer no longer was self-insuring and that the New Policies the Retailer had procured were in compliance with law.

34. In fact, the State Court was misled because it reached a preliminary conclusion that the Retailer had made a substantive change in its risk management program when, in fact, it had not done so.

## DETAILED STATEMENT OF FACTS

35. Lake Plaza acquired the Tenant's interest in a ground lease (the "Ground Lease") to a shopping mall located in the Southern District.

36. As a consequence Lake Plaza became the Retailer's sub-landlord pursuant to a sublease agreement (the "Sublease").

37. Aon provided Lake Plaza with an memorandum of insurance and, shortly thereafter, an insurance certificate, explicitly representing that the Retailer was self-insured for liability claims. (The memorandum (partially redacted) is annexed as **Exhibit A**; the certificate of insurance (partially redacted) is annexed as **Exhibit B**).

38. Lake Plaza objected to the self-insurance because the Sublease required that the Retailer carry public liability insurance with a licensed carrier naming Lake Plaza as an additional insured.

39. Lake Plaza sent a letter to the Retailer, dated August 8, 2008, demanding that the required insurance be procured.

40. In apparent response, Aon sent one of the Certificates to Lake Plaza representing that the Retailer was the named insured and Lake Plaza, the additional insured, on a commercial general liability policy issued by ACE having an aggregate coverage limit of $5,000,000 (the certificate of insurance (partially redacted), is annexed as **Exhibit C**).

41. An additional Certificate was sent covering a subsequent policy period, repeating the representation that the Retailer was the named insured on a commercial general liability

6

policy issued by ACE having an aggregate coverage limit of $5,000,000 (the certificate of insurance (partially redacted) is annexed as **Exhibit D**).

42. None of the certificates disclosed that: (i) each "policy" contained a $5,000,000 deductible; (ii) each "policy" named as additional insureds, among many others, the owners of numerous stores leased to the Retailer, all of which shared in the single $5,000,000 aggregate; and (iii) there was a private arrangement between ACE and the Retailer pursuant to which Retailer, and not ACE, were responsible for defending and indemnifying all claims less than $5,000,000.

43. Moreover, none of the Certificates attached as Exhibits C and D disclosed that the Retailer had not changed its risk management program from the one that was in place when Aon disseminated the binder and then a certificate of insurance stating that the Retailer was self-insured.

44. Upon information and belief, given the number of claims filed against the Retailer annually, the settlement history, and the actuarial reserves for contingent liabilities set forth in publicly filed documents, the Retailer and Aon knew to a certainty that the aggregate of $5,000,000 supposedly provided by the ACE policy would not begin to cover anticipated claims and that, as a practical matter the Retailer was self-insured.

45. Upon information and belief, the Certificates were designed to deceive Lake Plaza into thinking that the required insurance had been procured when in fact it had not been procured.

46. Upon information and belief, Aon sent the same Certificates to the numerous other parties that were named as additional insureds by the same policy without disclosing that, at most there was a single policy in place, having a $5,000,000 aggregate coverage limit and a

7

$5,000,000 matching deductible, that the "coverage" spread across numerous additional insureds and that ACE would not be providing a defense.

47. Moreover, even if the underlying policies theoretically required ACE to provide a defense, that obligation would disappear once the $5,000,000 in aggregate coverage, spread over so many additional insureds was exhausted.

48. In or about 2011 Lake Plaza learned that the Certificates were misleading because the Retailer was still self-insured and sent the Retailer a notice of sublease default.

49. The Retailer responded to the notice of sublease default by commencing an action in the Supreme Court of the State of New York (still pending) (the "Action") in which the Retailer maintains that it no longer is self-insured and was not even self-insured when Aon transmitted the binder and certificate stating that the Retailer was self-insured.

50. Lake Plaza has been forced to defend the Action, incurring attorneys' fees in excess of $75,000.00, exclusive of interest and costs, which expenditures would have been unnecessary had the Retailer, aided by the misleading Certificates, been forthcoming.

51. As a direct consequence of the notice of sublease default and while the Action was pending, the Retailer procured the New Policies.

52. The so-called New Policies were said to extend coverage back to 2008, to contain no deductibles and to name only Lake Plaza and its mortgagee as additional insureds.

53. The Retailer knew, and upon information and belief, so advised Aon and ACE that the Insurance Department had issued a policy statement determining that the New York Insurance Law and Regulations did not permit a New York licensed carrier to issue retroactive policies like the New Policies the Retailer claimed to have obtained from ACE.

54. Upon information and belief, in or about April 2011 and prior to issuing the New Policies, ACE attended a meeting with Insurance Department representatives and sent one of more written communications to the Insurance Department asking for an informal opinion as the legality of issuing the New Policies.

55. Upon information and belief, ACE knew when it contacted the Insurance Department that a litigation was pending or would soon be commenced by the Retailer against Lake Plaza.

56. The Retailer later submitted affidavits to the New York State Court purporting to recite that the Insurance Department had opined that the New Policies did not violate the Insurance Department's policy statement regarding retroactive insurance.

57. Lake Plaza learned that ACE sent a memorandum by e-mail to the Insurance Department ('the "E-mail") that, upon information and belief, described the structure of the Retailer's risk management program.

58. Lake Plaza assumed that it was in some way mistaken about the way in which the Retailer operated its risk management program operated because, based on Lake Plaza's understanding, the New Policies were contrary to the Insurance Department's policy statement.

59. Accordingly Lake Plaza made a FOIL request to the Insurance Department asking to see the E-mail.

60. Upon information and belief, the Insurance Department contacted ACE and asked if ACE had any objection to production of the E-mail.

61. Upon information and belief, ACE submitted a statement to the Insurance Department dated July 18, 2012 (the "ACE Objection") objecting to production of the E-mail.

9

62. As summarized in a letter dated July 20, 2012 written by the Insurance Department and sent to Ace, Ace took the following position in the ACE Objection with respect to production of the Email:

> "[Y]ou [ACE] assert that the email summarizes ACE's approach to resolving an issue presented by a client and that ACE conducted the necessary research, developed an independent and compliant solution and obtained regulatory consent prior to implementing the solution….
>
> You [ACE] further contend that it is likely that the information contained in the email will be used against ACE and ACE's client in litigation and that if disclosed, the email could provide an adverse party with a 'roadmap' for countering ACE's client's legal arguments and asserting counterclaims against ACE and ACE's client. You assert that to the extent that the disclosure of the email contributes to an adverse litigation outcome for ACE or ACE's client, the client is thereby injured by the disclosure within the meaning of the statute."

63. Upon information and belief, and as evidenced by the foregoing, ACE knew that the Retailer would be taking a position with the State Court that was unsustainable on the basis of information known to the Retailer which information the Retailer did not intend to disclose to the State Court.

64. Upon information and belief, ACE knew that Retailer intended to misrepresent to the State Court the true nature of its risk management program and to mislead the State Court as to the nature of the so-called Insurance Department approval.

65. Upon information and belief, ACE knew, and so represented to the Insurance Department that the New Policies did not make any substantive change in the structure of the Retailer's risk management program as it existed prior to the issuance of the New Policies because the Retailer was previously self-insured and continued to be self-insured.

66. Upon information and belief, ACE knew that the Retailer intended to represent to the State Court that once the New Policies were issued the Retailer would no longer be

10

self-insured when, in fact, ACE's compliant solution was dependent upon a completely contrary representation made to the Insurance Department that the Retailer were previously self-insured and would remain self-insured after the issuance of the New Policies.

## AS AND FOR A FIRST COUNT AGAINST AON
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

67. Plaintiff repeats and realleges paragraphs 1-66 of this Complaint as if fully set forth herein.

68. Upon information and belief, Aon's failure to disclose in the Certificates that the New Policies contained a $5,000,000 deductible, named as additional insureds the owners of numerous other store locations, contained an aggregate annual coverage limit of 5,000,000 and did not obligate ACE to defend and indemnify against claims, was likely to mislead Lake Plaza and anyone else reviewing the certificate as to the true configuration of the Retailer's risk management program.

69. Upon information and belief, the issuance by Aon of Certificates failing to disclose the matters identified in paragraph 46 of this Complaint, has a broad impact on consumers at large because the deceptive certificates expose consumers injured in stores operated by the Retailer to having only uninsured claims against a potentially insolvent company.

70. Upon information and belief, complete disclosure of the true nature and limitations of the risk management program would have resulted in the enforcement by recipients of those deceptive Certificates of contractual obligations that required the Retailer to procure insurance from licensed insurance carriers in amounts sufficient to ensure that meaningful amounts of coverage would be available to indemnify injured parties and assure there would be a paid for defense.

11

7 797v1

71. Upon information and belief: (i) the possibility that injured customers may be left only with unsecured claims in bankruptcy is one of the reasons why property owners require their tenants to carry insurance; and, and (ii) the assurance of a paid for defense another.

72. The risk presented to customers by self-insurance is illustrated by what transpired in several well-publicized bankruptcies such as the bankruptcies of General Motors, The Great Atlantic & Pacific Tea Company and Kmart Corporation in which, upon information and belief, injured third parties were relegated to unsecured claims and recoveries that were pennies on the dollar when, had there been insurance, those third parties would have received full recoveries.

73. Upon information and belief, the Retailer is sued for personal injuries hundreds upon hundreds of times each year and settles numerous other claims prior to litigation.

74. Upon information and belief, if the Retailer were to tender these claims to ACE the aggregate coverage limit would be quickly exhausted and the additional insureds would have no right to be defended by ACE.

75. Upon information and belief, the availability of a defense is a principal reason why commercial general liability insurance is required by contracts.

## AS AND FOR A SECOND COUNT AGAINST ACE
## AIDING AND ABETTING FRAUD UPON NEW YORK STATE COURT

76. Lake Plaza repeats and realleges paragraphs 1 to 66 of this Complaint as if fully set forth herein.

77. Upon information and belief, ACE knew that a central issue to be determined in the Action was whether the New Policies changed the substance of the Old Policies insofar as self-insurance was concerned.

78. Upon information and belief, ACE also knew that the Retailer had or intended to represent to the State Court that the New Policies did change the substance of the Old Policies and that as a consequence of such change the Retailer had corrected the lease default that was caused by the Old Policies.

79. Upon information and belief, ACE understood that the New Policies did not make any change in the substance of the Old Policies insofar as self-insurance was concerned and that any representations made by the Retailer to the State Court that self-insurance had been eliminated would be false and designed to defraud the State Court into reaching an erroneous conclusion.

80. Upon information and belief, and in an effort to aid and abet the Retailer in taking a false and fraudulent position in the State Court, ACE asserted the alleged privilege for the sole purpose of preventing Lake Plaza from obtaining a copy of the Email because the Email would expose the fraud that was being committed on the Court.

81. In fact, the State Court relied upon the representations constituting the fraud because the State Court found, preliminarily, that at least on the face of the New Policies, self-insurance had been eliminated.

82. Upon information and belief, the Email contains information that would have led the State Court to conclude, preliminarily at least, that the Retailer continued to be self-insured.

83. Upon information and belief, ACE aided and abetted the Retailer in conduct that resulted in a perversion of the judicial process.

**WHEREFORE**, Plaintiff demands judgment:

(a) on the first count, against Aon in an amount no less than $75,000.00, plus interest and costs;

13

7 2797v1

    (b) on the second count, against ACE in an amount no less than $75,000.00, plus interest and costs; and

    (c) granting to Plaintiff such other and further relief as to the Court seems just and proper.

Dated: New York, New York  
July 26, 2013

        Respectfully submitted,

        **Wilk Auslander LLP**

        By: _____  
          M. William Scherer (MS-6438)  
        1515 Broadway  
        New York, New York 10036  
        (212) 981-2300  
        **ATTORNEYS FOR PLAINTIFF**

14

| MEMORA | DUM OF INSURANCE | | | | DATE OF ISSUE: 08/01/07 | |
|---|---|---|---|---|---|---|
| **ODUCER** | | **COMPANIES AFFORDING COVERAGE** | | | | |
| AON RISK S RVICES, INC. OF ILLINOIS | | COMPANY LETTER | A | Self Insured Retention | | |
| 200 East Ra olph Street Chicago, IL 6 301 | | | | | | |
| PHONE: (86 283-7122 | | COMPANY LETTER | B | ACE American Insurance Company | | |
| | | COMPANY LETTER | C | Indemnity Insurance Company of North America | | |
| | | COMPANY LETTER | D | | | |
| | | COMPANY LETTER | E | | | |

**COVERAGE**

This memo ndum is furnished to you as a matter of information for your convenience. It is not intended to reflect all the terms and c nditions or exclusions of such policies. This memorandum is not an insurance policy and does not amend, alter, or ext d the coverage afforded by the listed policies. The insurance afforded by the listed policy is subject to all the terms, exclu ons and conditions of such policies.

This memo ndum verifies that the following coverages are in force: Commercial General Liability, Automobile Liability, Workers Co pensation and Employers Liability

| CO LTR | TYF | OF INSURANCE ☒ | POLICY NUMBER | EFF. DATE | EXP. DATE | LIMITS | | |
|---|---|---|---|---|---|---|---|---|
| A | GE | OMMERCIAL :RAL LIABILITY | Self Insured Retention $5,000,000 | 8/1/2007 | 8/1/2008 | GENERAL AGGREGATE | $ | XXXXXXXXX |
| | C( | GEN LIABILITY | | | | PRODUCTS-COMP/OP AGG | $ | XXXXXXXXX |
| | CL | M OCCUR | | | | PERSONAL & ADV INJURY | $ | XXXXXXXXX |
| | O\ | I & CONT PROT | | | | EACH OCCURRENCE | $ | XXXXXXXXX |
| | | | | | | FIRE DAMAGE (Any fire) | $ | XXXXXXXXX |
| | | | | | | MED EXPENSE (Any one person) | $ | XXXXXXXXX |
| B B | X A! A! S( HI N G SI P | UTOMOBILE LIABILITY AUTO OWNED AUTOS EDULED AUTOS ED AUTOS I-OWNED AUTOS AGE LIABILITY F-INSURED SICAL DAMAGE | ISAH08215984 (PPT) ISAH08216009 (Non PPT) | 8/1/2007 | 8/1/2008 | COMBINED SINGLE LIMIT | $ | 5,000,000 |
| | | | | | | BODILY INJURY (Per Person) | $ | XXXXXXXXX |
| | | | | | | BODILY INJURY (Per Accident) | $ | XXXXXXXXX |
| | | | | | | PROPERTY DAMAGE | $ | XXXXXXXXX |
| | E U O | :ESS LIABILITY !RELLA FORM IER THAN UMB | n/a | n/a | n/a | EACH OCCURRENCE | $ | XXXXXXXXX |
| | | | | | | AGGREGATE | $ | XXXXXXXXX |
| B B C | WORI EM | RS' COMPENSATION AND OYER'S LIABILITY | WLRC44477282 (CA) SCFC44477270 (WI) WLRC44477269 (AOS) | 8/1/2007 8/1/2007 8/1/2007 | 8/1/2008 8/1/2008 8/1/2008 | ☒ STATUTORY LIMITS | $ | Statutory |
| | | | | | | EACH ACCIDENT | $ | 1,000,000 |
| | | | | | | DISEASE-POLICY LIMIT | $ | 1,000,000 |
| | | | | | | DISEASE-EACH EMPLOYEE | $ | 1,000,000 |

**DESCRIP** ON OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

This Insuranc utomatically includes Additional Insured status where required by written contract or agreement. Also, where permitted by law, this insurance includes a Waiver of S rogation as required by written contract or agreement.

https://aonline. n.com/

# EXHIBIT B

# ACORD CERTIFICATE OF LIABILITY INSURANCE

**Date:** 08/01/2008

**PRODUCER**
Aon Risk Services Central, Inc.
200 East Randolph Street
Chicago, IL 60601

Phone: (66) 283-7122  Fax: (847) 953-5390

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURERS AFFORDING COVERAGE** — NAIC #

- INSURER A: Self Insured Retention
- INSURER B: Ace American Ins. Co.
- INSURER C: Indemnity Ins. Co. of North America
- INSURER D: National Union Fire Ins. Co. of Pittsburgh
- INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL OF THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN HAVE BEEN REDUCED BY PAID CLAIMS. LIMITS SHOWN ARE AS REQUESTED.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY — X COMMERCIAL GENERAL LIABILITY — CLAIMS MADE [X] OCCUR | Self Insured Retention $5,000,000 | 08/01/2008 | 08/01/2009 | EACH OCCURRENCE | $5,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | XXXXXXX |
| | | | | | | MED EXP (Any one person) | XXXXXXX |
| | | | | | | PERSONAL & ADV INJURY | $5,000,000 |
| | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY / PRO-JECT / LOC | | | | PRODUCTS-COMP/OP AGG | $5,000,000 |
| B | | AUTOMOBILE LIABILITY — X ANY AUTO / ALL OWNED AUTOS / SCHEDULED AUTOS / HIRED AUTOS / NON-OWNED AUTOS | ISAH08247274 ISAH08247316 | 08/01/2008 08/01/2008 | 08/01/2009 08/01/2009 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
| B | | | | | | BODILY INJURY (Per person) | XXXXXXX |
| | | | | | | BODILY INJURY (Per accident) | XXXXXXX |
| | | | | | | PROPERTY DAMAGE (Per accident) | XXXXXXX |
| | | GARAGE LIABILITY — ANY AUTO | | | | AUTO ONLY – EA ACCIDENT | XXXXXXX |
| | | | | | | OTHER THAN AUTO ONLY — EA ACC / AGG | XXXXXXX / XXXXXXX |
| D | | EXCESS/UMBRELLA LIABILITY — X OCCUR / CLAIMS MADE | 6061822 | 08/01/2008 | 08/01/2009 | EACH OCCURRENCE | $2,000,000 |
| | | | | | | AGGREGATE | $2,000,000 |
| | | DEDUCTIBLE / RETENTION $ | | | | | XXXXXXX / XXXXXXX / XXXXXXX |
| B | | WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY — ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS BELOW | WLRC42847938(CA) SCFC42847975(WI) WLRC42847859(AOS) | 08/01/2008 08/01/2008 08/01/2008 | 08/01/2009 08/01/2009 08/01/2009 | [X] WC STATU-TORY LIMITS / OTHER | Statutory |
| B | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| C | | | | | | E.L. DISEASE – EA EMPLOYEE | $1,000,000 |
| | | | | | | E.L. DISEASE – POLICY LIMIT | $1,000,000 |
| | | OTHER | | | | | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**
People's United Bank, ISAOA, ATIMA, 350 Bedford Street, 2nd fl, Stamford, CT 06901 & LAKE PLAZA SHOPPING CENTER LLC c/o Lerner Heidenberg Assoc. is included as Additional Insured where required by written contract or agreement.

**CERTIFICATE HOLDER**
LAKE PLAZA SHOPPING CENTER
LLC c/o Lerner Heidenberg Assoc
234 Closter Dock Road
Closter, NJ 07624.

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL _30_ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES

AUTHORIZED REPRESENTATIVE
Aon Risk Central, Inc.

ACORD 25  © ACORD CORPORATION 1988

# EXHIBIT C

# EXHIBIT D

# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY):** 07/27/2010

**PRODUCER:** Risk Services Central, Inc.
Chigo IL Office
20 East Randolph
Chigo IL 60601 USA

**PHONE:** (6) 283-7122   **FAX:** (847) 953-5390

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

### INSURERS AFFORDING COVERAGE

| Insurer | Name | NAIC# |
|---|---|---|
| INSURER A: | ACE American Insurance Company | 22667 |
| INSURER B: | Indemnity Insurance Co of North America | 43575 |
| INSURER C: | | |
| INSURER D: | | |
| INSURER E: | | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**LIMITS SHOWN ARE AS REQUESTED**

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | X | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS MADE [X] OCCUR | H00625519826 | 08/01/2010 | 08/01/2011 | EACH OCCURRENCE | $5,000,000 |
|  |  |  |  |  |  | DAMAGE TO RENTED PREMISES | $5,000,000 |
|  |  |  |  |  |  | MED EXP (Any one person) | Excluded |
|  |  |  |  |  |  | PERSONAL & ADV INJURY | $5,000,000 |
|  |  | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY ☐ PROJECT ☐ LOC |  |  |  | GENERAL AGGREGATE | $5,000,000 |
|  |  |  |  |  |  | PRODUCTS - COMP/OP AGG | $5,000,000 |
| A | A | AUTOMOBILE LIABILITY<br>ANY AUTO<br>X ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON OWNED AUTOS | ISAH08625499<br>ISAH08625505 | 08/01/2010<br>08/01/2010 | 08/01/2011<br>08/01/2011 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000 |
|  |  |  |  |  |  | BODILY INJURY (Per person) |  |
|  |  |  |  |  |  | BODILY INJURY (Per accident) |  |
|  |  |  |  |  |  | PROPERTY DAMAGE (Per accident) |  |
|  |  | GARAGE LIABILITY<br>ANY AUTO |  |  |  | AUTO ONLY - EA ACCIDENT |  |
|  |  |  |  |  |  | OTHER THAN EA ACC<br>AUTO ONLY: AGG |  |
|  |  | EXCESS / UMBRELLA LIABILITY<br>☐ OCCUR ☐ CLAIMS MADE |  |  |  | EACH OCCURRENCE |  |
|  |  |  |  |  |  | AGGREGATE |  |
|  |  | DEDUCTIBLE<br>RETENTION |  |  |  |  |  |
| B | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>PROPRIETOR/PARTNER/EXECUTIVE [N]<br>MEMBER EXCLUDED? | SCFC46138259<br>WI<br>WLRC46138211<br>All Other States<br>WLRC4613817A<br>CA MA | 08/01/2010<br>08/01/2010<br>08/01/2010 | 08/01/2011<br>08/01/2011<br>08/01/2011 | X WC STATU- OTH-<br>TORY LIMITS ER | |
| A | | | | | | E.L. EACH ACCIDENT | $2,000,000 |
|  | | If yes, describe under SPECIAL PROVISIONS below | | | | E.L. DISEASE-EA EMPLOYEE | $2,000,000 |
|  | | THESE | | | | E.L. DISEASE-POLICY LIMIT | $2,000,000 |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**
RE: 98 Rte. 6, Mahopac, NY 10541. Lake Plaza Shopping Center LLC, owner and Lerner Heidenberg Associates, property managers are included as Additional Insured with respect to the General Liability policy.

### CERTIFICATE HOLDER

Lake Plaza Shopping Center LLC
c/o Lerner Heidenberg
2 Closter Dock Road
Closter NJ 07624 USA

### CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE** *Ann Risk Services Central Inc*

ACORD 25 (2009/01)   ©1988-2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD